IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DEMERUS WILLIAM BELL, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CASE NO.: 3:15-cv-743-GMB |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

On November 9, 2010, Plaintiff Demerus William Bell ("Bell") applied for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, respectively, alleging a disability onset date of September 16, 2010 for both claims. Bell's claims were denied at the initial administrative level. Bell then requested and received a hearing before an Administrative Law Judge ("ALJ"). On April 16, 2014, the ALJ held a hearing, and on June 26, 2014 denied Bell's claims. Bell requested a review of the ALJ's decision and that request was denied on September 22, 2015. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security (the "Commissioner") as of September 22, 2015.

The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and Rule 73.1 of the Local Rules for the United States District Court, Middle District of Alabama, the parties have consented for the undersigned United States Magistrate Judge to conduct all proceedings in this case and

enter a final judgment. Based on the court's review of the record and the relevant case law, the court finds that the decision of the Commissioner is due to be REVERSED and REMANDED to the administrative law judge for further proceedings.

## I. STANDARD OF REVIEW

The court reviews a social security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, in such a case, reversal is not warranted even if the court itself would have reached a contrary result. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The 'substantial evidence' standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). It has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. The court must scrutinize the entire

record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Bell bears the burden of proving that he is disabled, and he is responsible for producing evidence to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a) (2012). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Is the claimant's impairment(s) severe?
(3) Does the claimant's impairment(s) satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform his former occupation?
(5) Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

3

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## II.  FACTUAL BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

Bell was 35 years old at the time of the ALJ's decision. R. 119. He completed the 12th grade and has worked sporadically since the 1990s, last working at a Publix supermarket as a deli clerk before he resigned in October of 2010. R. 120. He claims that he is unable to work due to swelling and pain from rheumatoid arthritis. R. 137, 142–46. His past relevant work experience includes loading and unloading trucks for Alabama Thrift Stores, operating a forklift for Walmart, construction, self-employment as a barber, landscaping, and work at a lumberyard. R. 138–39.

Following an administrative hearing, the ALJ found that Bell suffered from the following severe impairments under 20 C.F.R. §§ 404.1571, *et seq.*, and 416.971, *et seq.*: rheumatoid arthritis, osteoarthritis, hypertension, and obesity. R. 115. Despite these severe impairments, the ALJ found at step three of the analysis that Bell did not have an impairment or combination of impairments that meets or medically equals the severity of one of those listed in the applicable regulations. R. 116. The ALJ further found, at steps

four and five, that Bell has the residual functional capacity ("RFC") to perform sedentary work[1] but is unable to perform any past relevant work. R. 116–24. Specifically, the ALJ concluded that Bell can perform sedentary work with the following limitations:

> occasional pushing or pulling with upper and lower extremities; no climbing ladders, ropes or scaffolds; occasional climbing ramps and stairs; occasional balancing, kneeling, crouching, and stooping; no crawling; [avoid] frequent reaching, handling, fingering, and feeling; avoid concentrated exposure to extreme heat, cold, vibration; no exposure to dangerous machinery, unprotected heights; and no work requiring walking on uneven terrain.

R. 116. Ultimately, the ALJ concluded that Bell was not disabled within the meaning of the Social Security Act from September 16, 2010, his alleged disability onset date, through the date of the ALJ's decision, and the ALJ denied his claims. R. 124–25.

At issue in this case is the ALJ's decision to accord considerably more weight to the opinion of Dr. Stewart May than to that of Dr. David McLain. Both Dr. May and Dr. McLain examined Bell one time. Dr. May is an obstetrician and gynecologist ("OB/GYN"), while Dr. McLain is a rheumatologist. While both physicians diagnosed Bell with rheumatoid arthritis and hypertension, there were notable differences between their respective examinations. Dr. May reported that Bell had normal strength in all of his extremities, normal reflexes, and a normal range of motion in all areas except his fingers. R. 515–16. Specifically, one of the fingers on his right hand was in 20 degrees of flexion. R. 516. On the other hand, Dr. McLain reported more extensive limitations. He diagnosed Bell with osteoarthritis and depression in addition to rheumatoid arthritis and osteoarthritis.

---

[1] Sedentary work entails lifting a maximum of ten pounds, occasional lifting or carrying objects like files, ledgers, and small tools, and occasional walking and standing. *See* 20 C.F.R. §§ 404.1567(a) and 416.967(a).

R. 525. He also conducted testing and x-rays on Bell, which showed narrowed joint space consistent with osteoarthritis in both of his knees. R. 525. In his report, he noted that Bell's wrists, knees, neck, and fingers were tender. R. 525. He reported that Bell's pain would be distracting to his performance at work, that it would limit his ability to focus on a given task, and that the side effects of his prescribed medication would be severe and would "limit effectiveness due to distraction, inattention, drowsiness, etc." R. 521–22. As a result, Dr. McLain concluded that Bell would be limited in his ability to perform an eight-hour work day, and would likely be absent from work for more than four days per month. R. 521.

The ALJ based his determination that Bell has the RFC to perform sedentary work on the testimony of a vocational expert ("VE"), who was asked hypothetical questions about a claimant with the same age, education, work experience, and limitations as Bell.[2] R. 123–25, 178–79. The ALJ first asked the VE questions based on the limitations as reported in Dr. May's assessment. R. 178–79 & 513–16. The VE responded that there are three sedentary, unskilled jobs which an individual with Bell's limitations (as reported by Dr. May) could perform: general office clerk, order clerk, and receptionist/information clerk. R. 179. Then, the ALJ asked a question adding additional limitations as reported by Dr. McLain in his assessment. R. 180 & 521–28. In this case, the VE responded that such an individual could not perform any work in the national or regional economy. R. 180. Because the ALJ granted more weight to Dr. May's assessment than Dr. McLain's, he

---

[2] The Commissioner's burden to demonstrate a claimant's ability to perform other work may be satisfied through the testimony of a VE. *See, e.g.*, *Chester v. Bowen*, 792 F.2d 129, 131–32 (11th Cir. 1986).

6

relied upon the VE's testimony in response to the limitations reported by Dr. May. *See* R. 122-23. This led to the determination that Bell has the RFC to perform sedentary work and, therefore, to the finding that he is not disabled within the meaning of the Social Security Act.

### III. DISCUSSION

Bell presents just one issue for the court's review: the ALJ's decision to weigh the medical assessment of Dr. May more heavily than that of Dr. McLain in making the determination that Bell has the RFC to perform sedentary work. *See* Doc. 13. After careful consideration of the parties' arguments, the ALJ's opinion, and the record in this case, the court cannot say that the ALJ's decision is supported by substantial evidence.

"In evaluating medical opinions, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether the opinion is amply supported, whether the opinion is consistent with the record and the doctor's specialization." *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1527(d) & 416.927(d)). The opinions of examining physicians are given more weight than those of non-examining physicians, and the opinions of treating physicians are given substantial weight unless the ALJ shows good cause for not doing so. *See id.* In any event, "the ALJ must state with particularity the weight given to different medical opinions *and the reasons therefor*." *Id.* (emphasis added). If the ALJ fails to do so, it is impossible for a reviewing court to determine whether the decision is supported by substantial evidence. *Id.* The court cannot affirm the ALJ's decision "'simply because some rationale might have supported the ALJ's conclusion.'" *Id.* (quoting *Owens v. Heckler*, 748 F.2d 1511,

1516 (11th Cir. 1984)).  Thus, while the Commissioner correctly points out that an ALJ may reject a medical opinion if the evidence supports a contradictory conclusion, *see Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985), failure to specify the weight given to each opinion and the reasons therefor constitutes reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

The Commissioner is also correct that the determination of a claimant's residual functional capacity belongs to the ALJ, not to doctors, but our inquiry does not end there. *See* Doc. 14 at 4.  The court must determine whether the ALJ's reasoning was supported by substantial evidence.  Although the opinions of one-time examiners are not entitled to special deference, *see McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987), conclusory statements by the ALJ that an examining physician's opinion is inconsistent with the medical record "are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion." *Kahle v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d. 1262, 1272 (M.D. Fla. 2012).  Indeed, district courts in the Eleventh Circuit routinely reverse and remand decisions in which the ALJ fails to demonstrate specifically how a medical opinion is inconsistent with the medical record. *See id.* ("[R]eversal is required where an ALJ fails to sufficiently articulate the reasons supporting his decision to reject portions of a medical opinion. . . . In this case, the ALJ failed to sufficiently articulate his decision to reject portions of Dr. Barber's opinion."); *Small v. Comm'r of Soc. Sec.*, 2012 WL 646071, at *8 (M.D. Fla. Feb. 28, 2012) (reversing where the ALJ did not properly "articulate[] factual support" for the conclusion that a medical opinion was inconsistent with the medical record); *Poplardo v. Astrue*, 2008 WL

68593 (M.D. Fla. Jan. 4, 2008) (same).

Here, the ALJ stated, in conclusory fashion, that "Dr. McLain's opinion is inconsistent with the medical evidence of record and the claimant's activities of daily living," and that Dr. May's assessment is "generally consistent with the record as a whole." R. 123. In addition to the medical evidence and Bell's daily activities, the ALJ emphasized that (1) the examination was scheduled by Bell's attorney, and (2) Dr. McLain was a one-time examiner and not a treating physician. *See* R. 123. The court will first address the contention that Dr. McLain's opinion was inconsistent with the medical record, and then discuss the ALJ's other considerations in determining to give little weight to Dr. McLain's report.

Despite multiple recitations of the details from Bell's medical records, including treatment notes and symptom reports, the ALJ failed to articulate a clear medical basis for his contention that Dr. McLain's report is not consistent with the medical record. Instead, the ALJ merely summarized both reports and cited other factors, including Bell's lack of previous doctor's visits and medication, sporadic work history, and unpersuasive demeanor at the hearing. *See* R. 120–24. Of course, without any medical support for the ALJ's conclusory statements, the court would be forced to reweigh the evidence itself, and therefore cannot determine whether the ALJ's decision is based on substantial evidence. *See, e.g.*, *Small*, 2012 WL 646071 at *8 (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (stating that when an ALJ fails to provide factual support for his conclusion that a medical opinion is inconsistent with the medical record, the court is "left in a situation where it has to impermissibly reweigh the evidence")). Since the court may

9

not affirm merely because some rationale could support the ALJ's decision, the court is unable to conduct a proper review. *See Kelly*, 401 F. App'x at 407.

The ALJ took issue with many other aspects of Bell's case. He stated that Bell is capable of "exercising, cleaning up the apartment and cooking." R. 121. He also pointed to Bell's ability to remember to attend to his own personal care, that he "could count change," that he "spent time with other people," and that Bell had previously reported that he could walk a half mile before having to stop and rest. R. 121–22. These activities, according to the ALJ, are "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." R. 121. The ALJ also noted "relatively infrequent trips to the doctor," "routine and/or conservative" treatment for Bell's allegedly disabling symptoms, Bell's sporadic work history prior to the alleged disability onset date, Bell's "generally unpersuasive appearance and demeanor while testifying at the hearing," and the fact that the examination by Dr. McLain was scheduled and paid for by Bell's attorney. R. 123. Finally, he emphasized that Dr. McLain examined Bell one time. R. 123. Therefore, the ALJ concluded, Dr. McLain's opinion "is inconsistent with the medical evidence of record and the claimant's activities of daily living." R. 123. Dr. May's opinion, on the other hand, "is generally consistent with the record as a whole." R. 123.

The bases on which the ALJ relies do not constitute substantial evidence. For instance, the ALJ states that Dr. McLain's opinion is inconsistent with Bell's daily activities, which include light housework, occasional grocery shopping, watching television, preparing meals with family, and performing his own personal care. R. 121–23. However, in the Eleventh Circuit, "participation in everyday activities of short duration,

10

such as housework or fishing, [does not] disqualif[y] a claimant from disability." *Lewis*, 125 F.3d at 1441. In a factually similar case, a district court found that "[h]ousework, light cooking, and light grocery shopping are minimal daily activities" and "are not dispositive evidence of one's ability to perform sedentary work in a Social Security case." *Venette v. Apfel*, 14 F. Supp. 2d 1307, 1314 (S.D. Fla. 1998). Thus, Bell's relatively modest daily activities do not constitute a legitimate basis for discounting Dr. McLain's assessment.

Moreover, the ALJ noted that Bell took "relatively infrequent trips to the doctor for the allegedly disabling symptoms," that his treatment has been "essentially routine and/or conservative in nature," and that Bell "has not taken any narcotic based pain relieving medications in spite of the allegations of quite limiting pain." R. 122. While the ALJ may consider the extent and frequency of treatment when determining the severity of Bell's alleged disability, he may not "draw[] 'any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267–68 (11th Cir. 2015) (quoting Social Security Regulation 96-7p at 7). This is, of course, because there are a variety of reasons a claimant may not seek certain treatment or take certain medications—chiefly among them, the inability to afford it. *See* Social Security Regulation 96-7p at 7. Thus, the ALJ may need to "question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." *Id.* However, there is nothing in the record to suggest that the ALJ ever questioned Bell about why he may have inconsistently sought medical treatment or

11

neglected to take narcotics.[3] *See* R. 133–81.

The ALJ also gives substantial consideration to the fact that the examination by Dr. McLain was coordinated by Bell's attorney. *See* R. 123. However, the fact that a medical examination has been scheduled by the plaintiff's attorney is not a proper basis for rejecting that opinion. *See Tavarez v. Comm'r of Soc. Sec.*, 638 F. App'x 841, 847 (11th Cir. 2016) ("'[T]he mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report.'") (quoting *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998)); *Miles v. Chater*, 84 F.3d 1397, 1400–01 (11th Cir. 1996) (stating that the plaintiff was "entitled to an unbiased evaluation of her claim before another ALJ" after the ALJ had rejected a medical opinion and observed in his opinion that the doctor's examinations "almost invariably conclude that the person being examined is totally disabled"). "[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." *Reddick*, 157 F.3d at 726. Of course, as discussed, the ALJ has not relied on any such evidence.

In the absence of any substantial evidence in support of the ALJ's decision to accord Dr. May's testimony greater weight than Dr. McLain's, the court is left to guess the ALJ's reasoning for this determination. The court also notes that the ALJ seemed to overlook the

---

[3] The ALJ's failure to do so not only reflects on the lack of substantial evidence in support of the ALJ's rejection of Dr. McLain's opinion, but also demonstrates a failure to develop a full and fair record. *See Henry*, 802 F.3d at 1269 (holding that the ALJ failed to develop a full and fair record where he did not inquire into the reasons behind the claimant's conservative treatment and failure to take narcotic medication).

12

fact that Dr. May was also a one-time examiner.[4] *See* R. 117–18, 120–21, 514–17; *see also Tavarez*, 638 F. App'x at 847 (applying "equal force" to the fact that both examining physicians' assessments were based on a single examination). Moreover, the ALJ did not take into account the physicians' respective specialties. Dr. May is an OB/GYN while Dr. McLain is a rheumatologist. *See* R. 521–31. "[T]he opinion of a specialist is generally entitled to more weight than the opinions of other non-specialists." *Kerwick v. Comm'r of Soc. Sec.*, 154 F. App'x 863, 864 (11th Cir. 2005); *see also* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). Given that Bell's claims center on the severity of his rheumatoid arthritis and Dr. McLain is a rheumatologist, the ALJ should have considered the physicians' respective specialties in his assessment of Dr. McLain's opinion. There is no indication that he did so.

Accordingly, because the ALJ has failed to provide any medical basis supporting his contention that Dr. McLain's assessment is inconsistent with the medical record, and because certain of the ALJ's considerations were improper, the court cannot find that there is substantial evidence supporting the ALJ's decision to weigh Dr. May's opinion more heavily than Dr. McLain's. Therefore, the ALJ's decision is due to be reversed.

Bell argues that upon reversal, "[b]enefits should be awarded to the plaintiff by this Court." Doc. 13 at 13. Conversely, the Commissioner argues that, should the court conclude that the ALJ erred, "the appropriate remedy is reversal and remand for further

---

[4] Moreover, after explaining that he is granting little weight to Dr. McLain's assessment, the ALJ pointed out that Dr. McLain is not a treating physician. R. 123. However, neither is Dr. May—both are examining physicians.

consideration." Doc. 14 at 10. For the same reason the court is not permitted to morph into the finder of fact and reweigh the evidence in this case, it also must resist the temptation to "cut through delay by evaluating the administrative record itself" and determining whether Bell is entitled to benefits. *See, e.g.*, *McDaniel*, 800 F.2d at 1032. "[I]t would be an affront to the administrative process if courts were to engage in direct fact finding in these Social Security disability cases." *Id.* Thus, mindful of its role in evaluating whether the ALJ's decision was supported by substantial evidence and not deciding by itself the merits of Bell's actual claim, the court concludes that the appropriate remedy is reversal and remand to the administrative law judge for further proceedings.[5]

## IV. CONCLUSION

Based on the foregoing, it is ORDERED that the decision of the Commissioner denying benefits is REVERSED and REMANDED to the administrative law judge for further proceedings consistent with this opinion. A final judgment consistent with this opinion will be entered separately.

DONE this 7th day of November, 2016.

/s/ Gray M. Borden
UNITED STATES MAGISTRATE JUDGE

---

[5] In the Eleventh Circuit, the court may remand for entry of an order awarding benefits if "it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). The court cannot conclude that it is clear in this case that the evidence establishes Bell's disability without a doubt.

14